UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREAT LAKES ANESTHESIA, PLLC, SUMMIT
MEDICAL GROUP, PLLC, GREATER LAKES
AMBULATORY SURGICAL CENTER, PLLC, d/b/a
ENDOSURGICAL CENTER AT GREATER LAKES,

|  |  |
|---|---|
| Plaintiffs, | Case Number 11-10658 |
| v. | Honorable David M. Lawson |

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant,

and

GREATER LAKES AMBULATORY SURGICAL
CENTER, PLLC, d/b/a ENDOSURGICAL CENTER
AT GREATER LAKES, GREAT LAKES ANESTHESIA,
PLLC, and MICHIGAN INSTITUTE OF PAIN AND
HEADACHE, P.C.,

**ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER AND TO
QUASH SUBPOENA**

|  |  |
|---|---|
| Plaintiffs, | Case Number 11-11003 |
| v. | Honorable Robert H. Cleland |

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant,

and

GREATER LAKES AMBULATORY SURGICAL
CENTER, PLLC, GREAT LAKES ANESTHESIA,
PLLC, and SUMMIT MEDICAL GROUP, PLLC,

|  |  |
|---|---|
| Plaintiffs, | Case Number 11-11855 |
| v. | Honorable Avern Cohn |

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant.

_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR
## A PROTECTIVE ORDER AND TO QUASH SUBPOENA

The plaintiffs in these three cases are medical providers who rendered services to their various patients to treat injuries received in automobile accidents. Each of the patients was insured by defendant State Farm Mutual Automobile Insurance Company under Michigan's no-fault insurance law. The plaintiffs have sued State Farm to recover charges for those services. In each case, State Farm has hired Dr. Eugene Mitchell to perform a medical examination on or review medical records of the respective patient-insured, and presumably he intends to testify at trial that the services rendered by the plaintiffs were not reasonable or necessary.

Discovery in at least two of these cases is about to close. The plaintiffs have served a notice to take Dr. Mitchell's deposition and a subpoena directing him to bring various financial documents that reflect his relationship with State Farm, the law firm representing it, and his medical consultation business. On September 27, 2011, State Farm filed in each of these case three nearly identical motions to quash the subpoenas and for protective orders to prevent plaintiffs' counsel from questioning Dr. Mitchell on matters outside the scope of the litigation. Judges Robert Cleland and Avern Cohn, after consultation with each other and the undersigned, concluded that the interest of judicial efficiency would be best served by consolidating these motions for adjudication before a single judge. The consolidation does not affect the other aspect of the respective cases, which, except for these motions, remain assigned to the respective judges. The undersigned held a joint hearing on the defendant's motions on September 28, 2011. For the reasons discussed below, and on the record, the Court will grant the defendant's motion in part, order production of some of the subpoenaed items, limit the scope of the subpoena, and direct the deposition to proceed.

I.

-2-

The three lawsuits are all brought under Michigan's no-fault insurance law by health care providers seeking to recover reimbursement for medical services allegedly rendered to individuals insured by State Farm.  During discovery in Case Number 11-10658, Dr. Mitchell performed an examination of the insured at the request of State Farm and issued a medical opinion.  In Case Numbers 11-11003 and 11-11855, Dr. Mitchell, again at State Farm's request, reviewed the insureds' medical records and issued medical opinions.

On September 16, 2011, the plaintiffs noticed Dr. Mitchell's deposition for September 29, 2011.  The deposition notice included a request to produce the following documents:

1.  All calendars, *correspondence* or documents listing dates or times scheduled for *Eugen Mitchell Jr.'s* testimony in court or deposition, or to perform a non-treating evaluation.

2.  The entire files relating to Holly Nowland, Donald Amerson, and Stara Taylor in the possession of *Eugene Mitchell Jr.*

3.  All documents, including but not limited to *correspondence*, by *State Farm* to *Eugene Mitchell Jr.*, which (a) refer matters, cases, or claims to him, (b) request a medical record review from him, or (c) request he perform a *non-treating evaluation*.

4.  All bills, invoices, statements or documents specifying charges for services rendered by *Eugene Mitchell Jr.* for *State Farm*, *Hewson*, or any *evaluation entity*.

5.  All contracts and letters of understanding between *State Farm* and *Eugene Mitchell Jr.*

6.  All documents relating to financial transactions with, or services rendered for, *State Farm*.

7.  All documents showing the amounts paid by *State Farm* to *Eugene Mitchell Jr.*, including but not limited to ledgers, receipts, deposit slips, W-2 tax forms, and 1099 tax forms, and any other tax form.

8.  All bills, invoices, or itemization of expenses submitted by *Eugene Mitchell Jr.* to *State Farm*.

9.  All billing sheets or time logs relating to *Eugene Mitchell Jr.*'s charges or intended charges to *State Farm*, even those not yet finalized or submitted, including but not limited to those relating to Holly Nowland, Donald Amerson, and Stara Taylor.

10.  All documents relating to financial transactions with, or services rendered for *Hewson*.

11.  All documents showing the amounts paid by *Hewson* to *Eugene Mitchell Jr.*, including but not limited to ledgers, receipts, deposit slips, W-2 tax forms, and 1099 tax forms.

12.  All bills, invoices, or itemization of expenses submitted by *Eugene Mitchell Jr.* to *Hewson*.

13.  All billing sheets or time logs relating to *Eugene Mitchell Jr.*'s charges or intended charges to *Hewson*, even those not yet finalized or submitted, including but not limited to Holly Nowland, Donald Amerson, and Stara Taylor.

14.  All documents showing the amounts paid by any insurance company, law firm, or *evaluation entity* to *Eugene Mitchell Jr.* relating to a *State Farm claimant*, including but not limited to ledgers, receipts, deposit slips, W-2 tax forms, 1099 tax forms, records and reports.

15.  All reports or records provided by *Eugene Mitchell Jr.* to *State Farm* or to *Hewson*, or to an *evaluation entity* regarding a *State Farm claimant* including but not limited to Holly Nowland, Donald Amerson, and Stara Taylor.

16.  All reports, supplemental reports, addendums, notes, videotapes, audio tapes, photographs, fluoroscopic films, handwritten notes and medical records, authored, dictated, written or generated by *Eugene Mitchell Jr.*, relating to Holly Nowland, Donald Amerson, or Stara Taylor.

17.  All documents showing, relating to, describing, specifying, some or all compensation paid to *Eugene Mitchell Jr.*, by or on behalf of *State Farm* or *Hewson*.

18.  All documents which show, or from which one can determine, the number of cases, claims, claimants or medical files referred to *Eugene Mitchell Jr.* by *State Farm* or *Hewson* for each year of the *specified period*, including 2011.

19.  All documents which show, or from which one can determine, the number of cases, claims, claimants or medical files referred to *Eugene Mitchell Jr.* by *State Farm* or *Hewson* for each year of the *specified period*, including 2011, relating to

-4-

any of the plaintiffs in this action, or patients treated at Greater Lakes Ambulatory
Surgical Center, PPLLC D/B/A Endosurgical Center at Great Lakes.

20. All *correspondence* from *State Farm* or *Hewson* to *Eugene Mitchell Jr.*

21. All *correspondence* from *Eugene Mitchell Jr.* to *State Farm* or *Hewson*.

Def.'s Mot. for Protective Order, Ex. 1, Notice of Deposition (emphasis in original).  On September
22, 2011, the plaintiffs served a subpoena on Dr. Mitchell for production of the same documents
identified in the request for production of documents included in the notice of deposition.  During
oral argument, the defendant asserted that the subpoena broadened the scope of the requested
documents.

     In moving to quash the subpoena, State Farm argues that the plaintiffs' demands are
unreasonable because the information sought extends well beyond the boundaries of these cases,
which State Farms perceives to be drawn around Dr. Mitchell's involvement with the plaintiffs'
patients in the respective three lawsuits.  State Farm acknowledges that its relationship with Dr.
Mitchell also may be relevant, and to that end it has produced its own records of payments made to
Dr. Mitchell over the past five years for medical consultations, including examinations and report
writing.  However, State Farm insists that production of Dr. Mitchell's tax records, the reports he
generated in other cases, and information about his medical-consultation work with other insurance
companies is irrelevant to the present case and therefore beyond the scope of permissible discovery.
Therefore, the defendant contends a protective order should be entered on the grounds that (1) Dr.
Mitchell should be protected from undue harassment; (2) the information sought is beyond the scope
allowed by the Federal Rules of Civil Procedure; and (3) the right to privacy of other individuals
insured by State Farm not involved in these three cases outweighs the plaintiffs' right to the
information.  The plaintiffs contend that they have a right to develop evidence that demonstrates Dr.

Mitchell's bias, which can be shown through his continuing relationship with State Farm and his financial interest in cultivating insurance clients for his consulting business.

II.

The Federal Rules of Civil Procedure permit broad but not unlimited discovery.  In federal civil litigation, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  A court "may, for good cause, issue an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).

Likewise, a person served with a subpoena may object to it and move to quash it.  Under Rule 45(c), "the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).  The commentary to Rule 45 states that this subsection "is a catch-all category that enables the court to grant the motion to quash or modify in any other situation in which it finds, *sui generis*, what it believes to be an 'undue burden' imposed by the subpoena."  Commentary C45-22 to Fed. R. Civ. P. 45(c)(3)(A)(iv).  According to the Advisory Committee that provision was intended to track the protections of Federal Rule of Civil Procedure 26(c), which deals with protective orders.

"Undue burden" is not further defined by the rules, but generally a court must balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it.  *American Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (stating that the competing factors include "relevance, the need

-6-

of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed" and that "the status of a person as a non-party is a factor that weighs against disclosure" (internal quotation marks and citations omitted)); *see also EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994) (determining whether a burden is undue requires the court to weigh "the likely relevance of the requested material . . . against the burden . . . of producing the material.").  Non-party status is also relevant in determining whether the burden should be considered undue or excessive. *See, e.g.*, *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005).

Dr. Mitchell has not himself moved to quash the subpoena, and at the hearing counsel for State Farm expressly disavowed any intention of speaking on his behalf.  It is quite clear, however, that State Farm's and Dr. Mitchell's interests are aligned in seeking the protective order.  To that end, it is pertinent to observe that a nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be allowed.  *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996); *see also Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995); 9A Wright & Miller, Federal Practice and Procedure § 2463.1, p. 507.  "That person cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena."  9A Wright & Miller, Federal Practice and Procedure § 2463.1, p. 507.  Relevancy is one factor used by courts to balance against the burden of production.  However, the burden of demonstrating relevance is on the party seeking discovery.  *American Elec. Power*, 191 F.R.D. at 136.

A.

-7-

The plaintiffs must show that the financial information they seek from Dr. Mitchell is relevant, or at least is designed to lead to the discovery of admissible evidence. The threshold for establishing relevance is quite low. The Sixth Circuit has explained:

> The standard for relevancy is "extremely liberal." *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992). "'[E]vidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence' is relevant." *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998) (quoting Fed. R. Evid. 401). "'[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth.'" *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 475 (6th Cir. 1996) (quoting *Douglass*, 956 F.2d at 1344).

*United States v. Whittington*, 455 F.3d 736, 738-39 (6th Cir. 2006). The fact that an item of evidence is insufficient to prove a particular point by itself does not render the evidence irrelevant. 1 McCormick on Evidence, § 185, at 776 (4th ed. 1992) ("An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. It need not even make that proposition appear more probable than not. Whether the entire body of one party's evidence is sufficient to go to the jury is one question. Whether a particular item of evidence is relevant to the case is quite another. . . . A brick is not a wall.").

As mentioned above, the plaintiffs argue that the information they seek will establish Dr. Mitchell's bias in favor of State Farm. "The term 'bias' describes 'the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party.'" *Robinson v. Mills*, 592 F.3d 730, 737 (6th Cir. 2010) (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)). As the Sixth Circuit has explained:

> Bias is "not limited to personal animosity against a defendant or pecuniary gain." Instead, it includes mere "employment or business relationships" with a party and "is always relevant in assessing a witness's credibility."

*Ibid.* (quoting *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999)).

It is well-settled that "cross-examination to show the bias of a witness or his interest in a case is entirely proper," *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980), *superseded on other grounds by* 2000 amendment to Fed. R. Evid. 103(a), and the inquiry may extend to fees earned by the expert in other cases, *id.* at 783 (stating that "cross-examination of an expert witness regarding fees earned in prior cases is not improper").  Any relationship between Dr. Mitchell and State Farm that might cause him to slant his testimony in favor of State Farm, either wittingly or unwittingly, is relevant to credibility, and the jury is entitled to have that information to assess whether the witness is believable or how much weight to ascribe to the witness's testimony.  *Charter v. Chleborad*, 551 F.2d 246, 248 (8th Cir. 1977) (holding that evidence that a witness was employed by the defendant's insurer was admissible to show bias); *cf.* Fed. R. Evid. 611(b) (stating that the proper scope of cross-examination includes "matters affecting the credibility of the witness").  Certainly, a continuing relationship between the witness and a party in which a witness receives payment for generating an opinion that may be favorable to the interests of the party seeking the opinion is a source of bias.

In addition, expert witnesses in the business of furnishing litigation support, including medical-legal consultations, may have a motive to slant testimony to favor their customers and promote the continuation of their consultation business.  Courts have recognized that expert witnesses who seek law firms, insurance companies, or the government as clients may have interests beyond the fact of individual cases in producing opinion evidence.  *Behler v. Hanlon*, 199 F.R.D. 553, 557 (D. Md. 2001) (finding that "the fact that an expert witness may have a 20 year history of earning significant income testifying primarily as a witness for defendants, and an ongoing

economic relationship with certain insurance companies, certainly fits within recognized examples of bias . . . making such facts relevant both to the subject matter of the litigation . . . and placing it squarely withing the scope of discovery authorized by rule 26(b)(1)"). Although an expert witness would not necessarily succumb to business pressures, and most experts endeavor to remain faithful to the facts as viewed through the lens of their specialized knowledge, when formulating their opinion, a jury nonetheless is entitled to know of the potential influences that are brought to bear on the witness when called upon to assess credibility. *See Collins*, 621 F.2d at 784 ("Impeachment of witnesses through a showing of bias or interest aids the jury in its difficult task of determining facts when it is faced with contradictory assertions by witnesses on both sides of the case.").

The Court finds, therefore, that the requested information is relevant and falls squarely within the scope of discovery authorized by the Federal Rules of Civil Procedure.

## B.

The defendant argues, however, that requiring Dr. Mitchell to produce the requested information trenches on the privacy interests of others. State Farm says that the plaintiffs are seeking medical reports written by Dr. Mitchell in other cases unrelated to the plaintiffs' three patients, and perhaps unrelated to people insured by State Farm. Although Dr. Mitchell did not establish a doctor-patient relationship with any of those examinees, they still have an interest in keeping private their own health matters, especially when some of Dr. Mitchell's reports recite findings made by other physicians. The plaintiffs argue, however, that if Dr. Mitchell's reports establish a pattern of rote findings that favor the insurance company, the jury should be able to use that information to evalute Dr. Mitchell's credibility.

The defendant's concern is legitimate. But there is a relatively simple method for addressing it without diminishing the value of the information sought by the plaintiffs. Any document produced by Dr. Mitchell in response to the request for production or the subpoena that would reveal the identity of examinees in other cases unrelated to the three matters before the Court should be redacted to delete reference to the subjects' names. The name references should be replaced by the insurance claim numbers in the reports.

C.

The defendant also argues that Dr. Mitchell should be protected from undue harassment. The notice of deposition requests a substantial number of documents, and the subpoena, assuming it broadens the scope of requested information, certainly poses the risk of being unduly burdensome. For example, the defendant contends that there is no temporal limitation on the records sought, and some information may be privileged. In addition, the potential volume of documentation may be burdensome to produce.

The Court agrees that the scope of the subpoena is overbroad. The plaintiffs have acknowledged that over the past three years, Dr. Mitchell has been asked by State Farm to consult on approximately 99 cases. Dr. Mitchell presumably consults for other insurance companies as well. The defendant already has produced data for payments it has made to Dr. Mitchell over the last four years. The Court finds that a four-year look-back for financial data from Dr. Mitchell's consulting business is adequate to provide a full picture of his financial interest in forensic consulting. Given the volume of reports generated, a three-year limitation is reasonable to allow the plaintiffs to determine if any pattern emerges. Therefore, the Court will limit the subpoena to conform to those time periods.

IV.

For the reasons discussed above and on the record, the Court will grant in part the defendant's motion and enter a protective order imposing limitations on the subpoena. The deposition is scheduled to take place later this morning, and as discussed yesterday on the record, it ought to proceed, since discovery in my case and Judge Cleland's case formally closes on September 30, 2011. However, the Court will not prevent the parties from agreeing to adjust the dates and times of the deposition and production of records for the convenience of the lawyers and Dr. Mitchell, as long as the delays do not impact any other case management deadlines set out in the scheduling order (such as filing or responding to dispositive motions). The Court will deny the defendant's motion to the extent that it seeks to prevent the disclosure of the requested information altogether.

Accordingly, it is **ORDERED** that the defendant's motions for protective order and to quash subpoena [dkt. #26, Case No. 11-10658], [dkt. #32, Case No. 11-11003], and [dkt. #12, Case No. 11-11855] are **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiffs' subpoena *duces tecum* is limited to the production of documents created in the last four years with respect to financial information concerning Dr. Mitchell's medical-legal consulting business(es), and three years for documents constituting Dr. Mitchell's medical reports.

It is further **ORDERED** that Dr. Mitchell shall redact any information in medical reports that reveals the identity of examinees in other cases unrelated to the three above-captioned cases and shall substitute the relevant insurance claim number in place of the examinees' names.

-12-

It is further **ORDERED** that the motions are **DENIED** in all other respects.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 29, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 29, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---